## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Case No. 10-10083 (BLS) |
| Donna K. Brady, | ) | |
| | ) | Chapter 7 |
| Debtor. | ) | |
| ———————————— | ) | |
| TRI SUPPLY AND EQUIPMENT, | ) | |
| INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Adv. Pro. No.  10-50904 (BLS) |
| | ) | |
| DONNA K. BRADY, | ) | |
| | ) | |
| Defendant. | ) | |
| ———————————————— | ) | Re: Adv. Docket No. 8 |

### OPINION[1]

Before the Court is the motion  (the "Motion") [Adv. Docket No. 8] filed by Donna K. Brady

("Debtor") to dismiss the non-dischargeability complaint filed by Tri Supply and Equipment, Inc.

("Tri Supply").  For the following reasons, the Court will grant the Motion in part and deny the

Motion in part.

### I. BACKGROUND

Tri Supply is a Delaware corporation in the business of construction supply and equipment

leasing.  Debtor is the principal officer of several businesses in Delaware, including DK Brady

Excavating, Inc. ("DKBE"), Brady Crab Co., and Brady Supply and Equipment.  On August 31, 2001,

Debtor entered into a credit agreement (the "Contract") with Tri Supply on behalf of DKBE that she

and her husband, Warren Brady, personally guaranteed.  Under the agreement, Debtor and DKBE

rented equipment and purchased materials from Tri Supply, in large part for construction at a

refinery from 2001 through 2007.  In late 2007, Debtor defaulted on her obligations to Tri Supply

---

[1]      "The court is not required to state findings or conclusions when ruling on a motion under
Rule 12. . . ." Fed. R. Bankr. P. 7052(a)(3). Accordingly, the Court herein makes no findings of fact and
conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

and Tri Supply promptly brought an action against Debtor, Warren Brady, and DKBE in the Delaware Superior Court. On November 24, 2009, the Delaware Superior Court entered a default judgment (the "Default Judgment") against Debtor in the amount of $371,260.60 plus post-petition interest at a rate of 18 percent per annum.

On January 11, 2010 (the "Petition Date"), the Debtor filed her petition for relief under chapter 7 of title 11 of the United States Code (the "Bankruptcy Code"). Several months later, on April 3, 2010, Tri Supply initiated this adversary proceeding by filing a complaint (the "Complaint") alleging both that the Default Judgment is non-dischargeable under § 523(a)(4) of the Bankruptcy Code and that Debtor has engaged in fraudulent conduct sufficient to warrant denial of her discharge as an individual under § 727(a)(2). First, Tri Supply asserts that Debtor has violated a Delaware statute that protects subcontractors and that such violation brings the Default Judgment within § 523(a)(4), which excepts from discharge a debt incurred by fraud or defalcation while acting in a fiduciary capacity. Debtor contends that the statute that Tri Supply relies upon, and upon which the alleged fiduciary relationship is based, does not apply to her.

Second, Tri Supply asserts that Debtor is not entitled to discharge as an individual under § 727(a)(2) because Debtor allegedly concealed assets. Tri Supply argues that Debtor transferred real property and interests in properties to family members, transferred equipment and assets of various businesses, and failed to properly schedule certain assets, including several pieces of real estate, at least one vehicle, and a mortgage note in the face amount of $97,000.00, payable to Debtor.

On May 3, 2010, Debtor filed an answer to the Complaint generally denying the allegations. Debtor now seeks to dismiss all of the claims in the Complaint. The matter has been fully briefed and the Court heard oral argument on April 4, 2011. The matter is now ripe for decision.

## II. JURISIDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a) and (b)(1).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A), (I), and (J).

### III. STANDARD OF REVIEW

**A.    Legal Standard for a Motion to Dismiss**

The Debtor seeks dismissal of the Complaint pursuant to Rule 12(b)(6)of the Federal Rules of Civil Procedure, made applicable here under Federal Rule of Bankruptcy Procedure 7012, for "failure to state a claim upon which relief can be granted."  FED.R.CIV.P. 12(B)(6); FED. R. BANKR. P. 7012. A Rule 12(b)(6) motion tests the sufficiency of a complaint's factual allegations.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). Put another way, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), abrogated on other grounds by Harlow v. Fitzgerald, 457 U.S. 800, 814-15 (1982).

To decide a motion to dismiss, the Court must "accept all well-pleaded allegations in the complaint as true, and view them in the light most favorable to the plaintiff."  Carino v. Stefan, 376 F.3d 156, 159 (3d Cir. 2004); See also Phillips v. Cnty.of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (stating that the Supreme Court in Twombly "reaffirmed that, on a Rule 12(b)(6) motion, the facts alleged must be taken as true and a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits").  In addition, all reasonable inferences are drawn in favor of the plaintiff.  Kost, 1 F.3d at 183.  Legal conclusions, however, are not entitled to a presumption of truth.  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).

Further, the applicable Rule 12(b)(6) standard implicates the requirements of Rule 8 of the Federal Rules of Civil Procedure.  See Phillips, 515 F.3d at 234.  Rule 8 mandates that a complaint

contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(A). A complaint must provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Twombly, 550 U.S. at 555, quoting Conley v. Gibson, 355 U.S. 41, 47 (1957). Specifically, "Rule 8(a)(2) requires a 'showing' rather than a blanket assertion of an entitlement to relief . . . [because] without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests." Phillips, 515 F.3d at 232 (citing Twombly, 550 U.S. at 556 n.3).

The Third Circuit articulated the pleading standards created by Rule 8 and Rule 12(b)(6) as follows:

> "[S]tating a claim requires a complaint with enough factual matter (taken as true) to suggest" the required element. This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element.

Phillips, 515 F.3d at 234 (internal citations omitted).

**B.**    **Legal Standard for Pleading Fraud under § 727**

To plead denial of Debtor's discharge pursuant to 11 U.S.C. § 727, Tri Supply must meet the elevated pleading standards of Federal Rule of Civil Procedure 9(b). Rule 9(b), made applicable here by Federal Rule of Bankruptcy Procedure 7009, states:

> In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

FED.R.CIV.P. 9(B); FED. R. BANKR. P. 7009. The Third Circuit has explained that the purpose of Rule 9(b)'s requirement that plaintiffs particularly plead the "circumstances" of the alleged fraud is to "place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." Seville Indus. Machinery Corp. v. Southmost Machinery Corp., 742 F.2d 786, 791 (3d Cir.1984), cert. denied, 469 U.S. 1211 (1985).

4

It is not a defendant's fraudulent intent that must be pleaded with particularity, but the circumstances constituting fraud. The Third Circuit has indicated that "allegations of 'date, place or time' fulfill these functions, but nothing in Rule 9 requires them." Id. The Court therefore, reviews all of Tri Supply's claims under Rule 12(b)(6) and Rule 8, and additionally applies enhanced Rule 9 scrutiny to Tri Supply's fraud-related claims.

## IV. PARTIES' POSITIONS

### A.    Tri Supply's Position

Tri Supply posits that it has stated allegations sufficient to warrant denial of discharge of the Default Judgment and of Debtor as an individual. First, Tri Supply argues that § 523(a)(4), which prevents discharge of debts for fraud or defalcation while acting in a fiduciary capacity, applies here to bar the Default Judgment from discharge ("Count One"). Tri Supply asserts that Debtor's failure to pay Tri Supply the funds it was owed under the Contract constituted a breach of a fiduciary duty. That fiduciary duty, Tri Supply contends, arose under Title 6, Chapter 35 of the Delaware Code (the "Construction Trust Statute"), which the Delaware legislature designed to ensure that subcontractors and other suppliers of materials or labor are paid the monies owed them. Tri Supply requests that the Court construe the Construction Trust Statute broadly to infer that Debtor owed a fiduciary duty to Tri Supply that she violated when she failed to remit payment of the funds represented by the Default Judgment. This violation, the argument continues, is sufficient to bring Debtor within the discharge exception of section 523(a)(4) for fraud or defalcation while acting in a fiduciary capacity.

Second, Tri Supply asserts that Debtor has engaged in fraudulent conduct sufficient to warrant denial of her discharge as an individual under § 727(a)(2) ("Count Two").

### B.    Debtor's Position

Debtor contends that Tri Supply has failed to state a claim upon which relief can be granted. Specifically, she asserts that she is not a fiduciary under the Construction Trust Statute cited by Tri

5

Supply because as an officer of DKBE, she does not qualify as a "contractor" within the meaning of the statute. Moreover, because Tri Supply mainly supplied rental equipment to Debtor that was not used for construction or repair of buildings, or for paving or installation of equipment, Debtor contends that she did not provide or deliver "materials" for purposes of the statutory requirements.

Finally, as to the allegations of bad faith or concealment, Debtor submits that each instance of alleged wrongdoing has a logical explanation. For example, Debtor argues that the approximately $75,000 in withdrawals from Debtor's companies were properly reconciled and represented unpaid salary for Debtor and her husband; that a $39,000 Wawa convenience store check withdrawn six days post-petition was representative of payment for invoices for snow removal services performed by Warren Brady;[2] and that Debtor's transfers of real estate to Warren Brady's family members constituted repayment of legitimate debts.[3]

## V. DISCUSSION

### A.    Count One: Exclusion from Discharge under § 523(a)(4)

A fundamental goal of the Bankruptcy Code is to provide individuals burdened with overwhelming debt a new beginning. The Supreme Court, however, has cautioned that, "in the same breath that we have invoked this fresh start policy, we have been careful to explain that the [Bankruptcy Code] limits the opportunity for a completely unencumbered new beginning to the

---

[2]    Debtor notes that the transfer of this sum to Warren Brady may have constituted a "technical wrongdoing."

[3]    Debtor has also asserted that Plaintiff's claims are barred by res judicata. Because the Court dismisses Count One on the ground that Plaintiff has failed to show that Debtor comes within the meaning of "contractor" in the Construction Trust Statute, the Court does not reach the res judicata arguments. However, the Court observes that Judge Sontchi recently found, on facts similar to those at bar, that principles of res judicata did not bar a plaintiff from asserting non-dischargeability claims in a bankruptcy proceeding under sections 523(a)(2) and (a)(4) because "state courts cannot determine whether debts of a kind specified in sections 523(a)(2) and (a)(4) are non-dischargeable in bankruptcy." Moran v. Crowe (In re Moran), 413 B.R. 168, 179 (Bankr. D. Del. 2009). Citing both Supreme Court and Third Circuit precedents, the court in Moran noted that Congress has placed dischargeability determinations within the exclusive province of the bankruptcy courts. Id. Therefore, this Court finds that the Debtor's argument that the non-dischargeability claims brought against her are barred by the rule against claim splitting would fail even if Debtor were a "contractor," in light of the fact that the remedy Plaintiff seeks here, non-dischargeability, could not have been raised, much less resolved by the state court.

honest but unfortunate debtor." Grogan v. Garner, 498 U.S. 279, 286-87 (1991) (internal quotation marks omitted).

The limitations on a fresh start are set forth in § 523, which provides nineteen exceptions to discharge. *See* 11 U.S.C. § 523. These exceptions reflect a Congressional determination that the continued enforceability of certain types of debt is more important than a debtor's fresh start. See Cohen v. de la Cruz, 523 U.S. 213 (1998). The § 523 exceptions are strictly construed in favor of the debtor and the party asserting non-dischargeability bears the burden to show, by a preponderance of the evidence, that the disputed debt is not dischargeable. Grogan, 498 U.S. at 287-88; Ins. Co. of N. Am v. Cohn (In re Cohn), 54 F.3d 1108, 1114 (3d Cir. 1995).

Section 523 (a)(4) provides in relevant part: "A discharge under section 727. . . of this title does not discharge an individual debtor from any debt-- . . . for fraud or defalcation while acting in a fiduciary capacity." 11 U.S.C. § 523(a)(4). Judge Sontchi recently provided a typically exhaustive discussion of this statutory provision in Moran v. Crowe (In re Moran), 413 B.R. 168 (Bankr. D. Del. 2009). The Court first examines whether Debtor qualifies as a fiduciary within the meaning of § 523(a)(4).

To ascertain the meaning of the term "fiduciary" as used in § 523(a)(4), the Court must look to federal law. COLLIER, supra at ¶ 523.10[d]. Under federal law, the qualification that the debtor be acting in a fiduciary capacity under § 523(a)(4) has consistently been limited in its application to what may be described as technical or express trusts. In re Moran, 413 B.R. at 185 n. 70. Thus, an exception to discharge cannot be based upon a constructive or implied trust. Id. at 185.

Although federal law governs the determination of whether a person or entity is a "fiduciary," courts considering dischargeability under § 523(a)(4) have looked to state law to evaluate the presence of a technical trust relationship barring the discharge of a debt under § 523(a)(4). COLLIER, supra at ¶ 523.10[d]; Quaif, 4 F.3d 950 (insurance agent owed fiduciary duty to insurer under Georgia insurance law); In re Moran, 413 B.R. at 185-186 (contractor owed fiduciary

duty to homeowner under Delaware construction trust fund statute); In re Manley, 135 B.R. 137 (Bankr. N.D. Okla. 1992) (building contractor owed fiduciary duty to homeowners under Oklahoma mechanics' lien statute); Rhode Island Lottery Comm'n v. Cairone (In re Cairone), 12 B.R. 60 (Bankr. D.R.I. 1981) (lottery sales agent owed fiduciary duty to state lottery commission under Rhode Island law); But see Matter of Marchiando, 13 F.3d 1111 (7th Cir. 1994) (lottery sales agent not a fiduciary under Illinois law).

For purposes of § 523(a)(4), the applicable state law creating a fiduciary relationship must clearly outline the fiduciary duties and identify the trust property; if state law does not clearly and expressly impose trust-like obligations on a party, a court should not assume that such duties exist and should not find that there was a fiduciary relationship. COLLIER, supra at ¶ 523.10[d]; In re Moran, 413 B.R. at 186. Therefore, to determine whether a trust existed here, the Court must look to Delaware law. Tri Supply points the Court to the Construction Trust Statute to establish the existence of an express trust for its benefit. Section 3502 of the Construction Trust Statute impresses with trust any funds received in connection with a contract to build: "All moneys or funds received by a contractor in connection with a contract for the erection, construction, completion, alteration or repair of any building . . . shall be trust funds in the hands of the contractor." 6 Del.C. § 3502.

Under § 3501 of the Construction Trust Statute, a contractor is defined to include, but is not limited to

> an architect, engineer, real estate broker or agent, subcontractor or other person who enters into any contract with another person to furnish labor, and/or materials in connection with the erection, construction, completion, alteration, or repair of any building or for additions to a building, by such contractor.

6 Del.C. § 3501(2). In order for Tri Supply to assert a successful claim under the Construction Trust Statute, as a threshold matter, Tri Supply must demonstrate that Debtor is a "contractor" within the meaning of the statute.

It is clear from the record before the Court that Debtor personally guaranteed the Contract with Tri Supply, which enabled DKBE to receive rental equipment and supplies from Tri Supply. Equally apparent is the fact that this personal guarantee does not bring Debtor within the meaning of "contractor" under the terms of the Construction Trust Statute. However, Tri Supply has attempted to argue that by virtue of the contractual relationship between DKBE and Tri Supply, Debtor did owe Tri Supply a statutory fiduciary duty as an individual officer and director of DKBE.

The Construction Trust Statute explicitly lists architects, engineers, real estate brokers or agents, and subcontractors as those included within the definition of "contractor." 6 Del.C. § 3501(2). Conspicuously absent from the list is any mention of officers and directors of named entities. Similar statutes in other states explicitly name officers and directors as contractors. For example, a similar statute, the Wisconsin theft-by-contractor statute, states in relevant part: "If the prime contractor or subcontractor is a corporation . . . such misappropriation also shall be deemed theft by any officers, directors, members, partners, or agents responsible for the misappropriation." Wis. Stat. § 779.02(5); see also Ganther Constr., Inc. v. Ward (In re Ward), 417 B.R. 582 (Bankr. E.D. Wis. 2009) (finding officer liable as fiduciary of trust under statute). Likewise, a Michigan statute, which is worded more broadly and does not specifically define "contractors," has also led courts in the Sixth Circuit to consistently hold corporate officers liable under that state's construction trust statute:

> In the building construction industry, the building contract fund paid by any person to a contractor, or by such person or contractor to a subcontractor, shall be considered by this act to be a trust fund, for the benefit of the person making the payment, contractors, laborers, subcontractors or materialmen, and the contractor or subcontractor shall be considered the trustee of all funds so paid to him for building construction purposes.

Mich. Comp. Laws § 570.151; see also Patel v. Shamrock Floorcovering Serv., Inc. (In re Patel), 565 F.3d 963 (6th Cir. 2009) (holding officer liable as contractor under construction trust statute). The Court concludes that if the Delaware legislature intended to include officers and directors within the meaning of "contractor," it would have done so explicitly. Because the Construction Trust

Statute does not specify officers and directors among those who may be liable as "contractors," the Court finds that Debtor, as an individual officer of DKBE, does not qualify as a "contractor" under the statute.

In the absence of any clear authority establishing that Debtor was a "contractor" within the meaning of the Construction Trust Statute, Tri Supply cannot successfully state a claim for exclusion under section 523(a)(4). Therefore, the Motion is granted as to Count One of the Complaint and it is dismissed.[4]

**B.    Count Two: Denial of Discharge under § 727(a)(2)**

To warrant denial of discharge under 11 U.S.C. § 727(a)(2),[5] the proponent must prove by a preponderance of the evidence that the debtor "(1) transferred or concealed property; (2) belonging to [her]; (3) within one year of the bankruptcy filing or after the petition was filed; and (4) with intent to hinder, delay, or defraud a creditor." Serio v. DiLoreto, 266 Fed. Appx. 140, 144 (3d Cir. 2008) (citing In Re Dawley, 312 B.R. 765, 782 (Bankr. E.D. Pa.2004)). "[A]ctual fraudulent intent may be ascertained by circumstantial evidence or inferences drawn from a course of conduct." Kwasnik v. Permahos, 2011 WL 748144, 2 (Bankr. D. N.J. 2011)(citing In re Dawley, 312 B.R. at 782).

The Court finds that Count Two of the Complaint meets the requirement of Rule 9(b). The purpose of the rule is to allow a defendant to meaningfully respond to a complaint. Wolstein v. Docteroff (In re Docteroff), 133 F.3d 210 (3d Cir. 1997). The Complaint has alleged sufficient facts to allow the Court to draw the reasonable inference that the Debtor has acted with actual intent to

---

[4]    Because the Court finds that Debtor was not a fiduciary under the Construction Trust Statute, Debtor cannot come within the § 523(a)(4) exception to discharge and the Court need not reach the issue of defalcation.

[5]    Section 727(a) provides:
    The court shall grant the debtor a discharge, unless— . . .the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed . . . property of the debtor, within one year before the filing of the petition; or property of the estate, after the date of the filing of the petition[.]

hinder, delay, or defraud a creditor. For example, the three transactions that Tri Supply highlights, (1) the transfers of real estate to family members; (2) the withdrawal, six days after the Petition Date, of $39,000; and (3) $75,000 in expenses drawn from Debtor's business accounts for personal use, all suggest evidence of actual intent to hinder, delay, or defraud creditors. Moreover, the facts pleaded in the Complaint put Debtor sufficiently on notice to respond to the Complaint because they specifically identify the circumstances of the fraudulent conduct. Therefore, the Motion is denied as to Count Two of the Complaint.

## VI. CONCLUSION

The Court will grant Debtor's Motion as it relates to non-dischargeability of a debt pursuant to Bankruptcy Code § 523(a)(4) and will dismiss Count One. The Court will deny Debtor's Motion as it relates to non-dischargeability of an individual pursuant to Bankruptcy Code § 727(a)(2).

An appropriate Order follows.

BY THE COURT:

Dated: Wilmington, Delaware
      May 18, 2011

Brendan Linehan Shannon
United States Bankruptcy Judge